## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
#### ORLANDO DIVISION

**MONIQUE ROBSON,**

**Plaintiff,**

**v.**                                                    **Case No: 6:21-cv-719-GAP-LRH**

**D.R. HORTON, INC.,**

**Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **DEFENDANT D.R. HORTON'S MOTION TO COMPEL ARBITRATION AND DISMISS OR, IN THE ALTERNATIVE, STAY PROCEEDINGS PENDING ARBITRATION (Doc. No. 4)** |
| **FILED:** | **April 29, 2021** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part and DENIED in part**.

## I.    INTRODUCTION.

Plaintiff Monique Robson instituted this action against her former employer, Defendant D.R. Horton, Inc. in state court.   Doc. No. 1-1, at 1–6.   In the complaint, Plaintiff alleges that Defendant violated Florida Statute § 760.10 by engaging in unlawful employment practices.   *Id.* at 5. Specifically, Plaintiff alleges that she has multiple sclerosis and requested reasonable accommodations from Defendant because of her disability, but rather than engaging in an interactive

process, Defendant instead terminated Plaintiff's employment for alleged performance deficiencies that did not exist. *Id.*

On April 23, 2021, Defendant removed the case to this Court, alleging jurisdiction based on the diversity of citizenship between the parties. Doc. No. 1. On April 29, 2021, Defendant filed the above-styled Motion to Compel Arbitration and Dismiss or, in the Alternative, Stay Proceedings Pending Arbitration. Doc. No. 4. Defendant contends that when Plaintiff was hired, she executed an arbitration agreement during her employment onboarding process, signing said agreement by electronic signature. *Id.*; *see* Doc. No. 4-1, at 20–22 (copy of mutual arbitration agreement). Therefore, according to Defendant, this lawsuit should be sent to arbitration and otherwise dismissed, or in the alternative, stayed pending the outcome of arbitration. Doc. No. 4. Defendant also requests an award of fees and costs for bringing the motion. *Id.* at 13–14. In support of its motion, Defendant submitted the sworn declaration of Amanda Tercero, a Human Resources ("HR") Manager for Defendant, Plaintiff's E-Signature Consent Form, Plaintiff's job application, and a copy of the mutual arbitration agreement (Doc. No. 4-1) as well as several email exchanges between counsel for the parties (Doc. No. 4-2).

In response, Plaintiff argues that there is no agreement to arbitrate. Doc. No. 12. Specifically, Plaintiff denies that Defendant ever presented her with, or that she ever signed, an arbitration agreement. *Id.* In support, Plaintiff submitted her own sworn declaration. Doc. No. 12-1. Plaintiff also disputes Defendant's entitlement to fees and costs in filing the motion, but in turn, seeks to recover attorney's fees and costs "in having to defend against the same." Doc. No. 12, at 9, 10.

Defendant has also filed an authorized reply brief, reiterating its belief that the parties entered into a valid and enforceable arbitration agreement.   Doc. No. 15.   Defendant supported the reply with a sworn declaration of Vicki Jones, another HR Manager for Defendant.   Doc. No. 15-1.

The motion was referred to the undersigned.   Upon consideration of the submissions of the parties, I determined that an evidentiary hearing was necessary for resolution of the motion, given that the parties' competing declarations raised an issue of fact as to whether Plaintiff signed the arbitration agreement.   Doc. No. 18.   Accordingly, on June 17, 2021, I held an in-person evidentiary hearing.   Doc. Nos. 21, 24.[1]

At the outset of the hearing,[2] the parties agreed that the Court can act as a trier of fact on the motion to compel arbitration; and that neither party was requesting a jury proceeding on whether a valid agreement to arbitrate exists.   Tr. 7.   At the beginning of the hearing, I also confirmed with counsel for both sides that "the evidence that both sides have submitted along with their motion, response, and reply, I will consider that evidence along with whatever's presented here today."   Tr. 10.   Neither party objected.   *Id.*   Later in the hearing, however, counsel for Plaintiff raised a hearsay objection to the Tercero and Jones declarations submitted in support of Defendant's motion and reply.   Tr. 47.   I informed Plaintiff's counsel that there would be an opportunity to brief the hearsay issue post-hearing for the Court.     Tr. 48.

---

[1] Defendant moved the Court to permit the two HR managers, Ms. Tercero and Ms. Jones, and both defense counsel to attend the evidentiary hearing virtually.   Doc. No. 19.   I denied the request for several reasons by written order.   Doc. No. 20.   At the beginning of the hearing, counsel for Defendant notified the Court that the HR managers were "available waiting on Zoom."   Doc. No. 24, at 8, 9.   However, I reminded counsel that the request for a virtual appearance was denied, Defendant never requested a continuance of the hearing, and thus only the evidence Defendant presented in the courtroom would be considered.   *See id.*

[2] The transcript of the evidentiary hearing is available at Doc. No. 24, and it will be cited throughout this Report as Tr. #, with # reflecting the internal pagination of the transcript.

During the hearing, Defendant presented the testimony of one witness: Kameron Smith, who Defendant employs as an Office Manager and HR coordinator, and who conducted Plaintiff's employment onboarding process. Tr. 3, 11, 29. During Ms. Smith's testimony, Defendant introduced two exhibits. First, Defendant introduced Exhibit 1, a copy of the employment onboarding documents from the Taleo software used by Defendant, which included a copy of the mutual arbitration agreement. Tr. 30–31, 37–38. *See* Doc. No. 22-1 (copy of Exhibit 1 filed under seal).[3] Plaintiff objected to introduction of the arbitration agreement for lack of foundation and lack of predicate. Tr. 31. The undersigned allowed admission of Exhibit 1 into evidence with one caveat, that it was "an example of the new hire packet with the understanding that whether or not Ms. Robson [Plaintiff] signed it remains in dispute." *Id.* Neither party had an objection to that procedure. Tr. 32–33. Plaintiff subsequently stipulated that it was her electronic signature on every other document contained in Exhibit 1, except for the signature on the mutual arbitration agreement. Tr. 36. Exhibit 2 is a stand-alone copy of the mutual arbitration agreement, which Defendant introduced at the hearing, with the same objection and resolution as Exhibit 1. Tr. 36–39. *See* Doc. No. 22-2 (copy of Exhibit 2).[4]

---

[3] Exhibit 1 was filed under seal because it includes Plaintiff's personal information, including social security number and date of birth. *See* Tr. 37.

[4] In a footnote in her post-hearing briefing, Plaintiff makes passing reference to Federal Rule of Evidence 901(b)(4) and cites to caselaw from the Northern District of Georgia on the issue of authentication. (Doc. 26, at 9, n. 2). It does not appear that Plaintiff is actually arguing that there is an authentication issue with respect to either Exhibit 1 or 2, nor could she at this juncture. The Court conducted a lengthy discussion with counsel during the hearing about Exhibits 1 and 2, and while Plaintiff initially mentioned "foundation and predicate," Plaintiff ultimately narrowed her objections solely to the question of whether it was her signature on one document – the mutual arbitration agreement. *See* Tr. 31–32, 37, 39–40. Thus, to the extent that Plaintiff's footnote can be interpreted as an attempt to object to either Exhibit on the basis of lack of authentication, that objection has been waived. And in any event, I find both Plaintiff's and Ms. Smith's testimony to be more than sufficient to establish the requisite personal knowledge of the authenticity of Exhibits 1 and 2. *See* Fed. R. Evid. 901(b)(1).

Plaintiff presented her own testimony at the hearing, but no other witnesses, nor did she introduce any exhibits into evidence.   Tr. 71–108.

After the hearing, the undersigned permitted both sides thirty (30) days to submit supplemental briefing instead of closing argument, to include legal argument only and no new evidentiary submissions.   Tr. 109.   *See also* Doc. No. 23.   Both parties timely submitted such supplemental briefing, Doc. Nos. 26, 27, and thus Defendant's motion to compel arbitration is now ripe for review.[5]   The only issue that the Court need resolve is whether a valid agreement to arbitrate exists.   *See* Tr. 110.

For the reasons that follow, I will respectfully recommend that Defendant's motion to compel arbitration be granted in part, to the extent that the Court should find that a valid agreement to arbitrate exists and therefore compel arbitration.   But Defendant's request to dismiss the case should be denied, and the matter should be stayed pending the outcome of arbitration.   The parties' requests for attorney's fees attendant to the motion and response should also be denied.

## II.   APPLICABLE LAW.

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. ("FAA"), establishes a "federal policy favoring arbitration" and requires that courts "rigorously enforce agreements to arbitrate." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (citations omitted).   Under the FAA, a written arbitration provision in a "contract evidencing a transaction involving commerce"

---

[5] Plaintiff's post-hearing briefing fails to comply with the typography requirements set forth in Local Rule 1.08, despite a specific admonition during the hearing that it must.   *See* Tr. 110.   As a result, it appears that Plaintiff's brief exceeds the 25-page limit.   Doc. No. 26.   While the brief could be stricken on this basis alone, for the sake of judicial efficiency and to avoid delay of resolution of this matter, I have elected to consider Plaintiff's post-hearing briefing as filed.   *See* Local Rule 1.01(b).   Going forward, however, Plaintiff is reminded of her obligation to comply with all Federal Rules of Civil Procedure, Local Rules of this Court, and Court Orders.   Failure to do so may result in the summary denial or striking of any offending filing.

is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."   9 U.S.C. § 2.

In determining whether a dispute is subject to arbitration, courts must consider three issues: "(1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived."   *Fla. Farm Bureau Ins. Cos. v. Pulte Home Corp.*, No. 8:04-cv-2357-T-EAJ, 2005 WL 1345779, at *3 (M.D. Fla. June 6, 2005).   Here, the parties dispute only the first requirement—whether a valid written agreement to arbitrate exists.   *See* Tr. 110.   Under Florida law, "[t]he party seeking enforcement of an [arbitration] agreement has the burden of establishing that an enforceable agreement exists."   *Sinclair v. Wireless Advocs., LLC*, No. 20-CV-60886-RAR, 2021 WL 865458, at *7 (S.D. Fla. Mar. 1, 2021) (citing *CEFCO v. Odom*, 278 So. 3d 347, 352 (Fla. 1st Dist. Ct. App. 2019)).

"[U]nder the FAA, no party can be compelled to arbitrate unless that party has entered into an agreement to do so."   *Emp'rs Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001).   Generally, whether the parties have entered into an arbitration agreement is a question for resolution by the Court, not by the arbitrator.   *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299–300 (2010); *Lambert v. Austin Ind.*, 544 F.3d 1192, 1196 (11th Cir. 2008).[6]   "In deciding whether the parties agreed to arbitration, the Court applies state law governing

---

[6] I note that in the motion to compel arbitration, Defendant asserts, in conclusory fashion, that "pursuant to the terms of the Mutual arbitration agreement, Plaintiff agreed that any issues concerning the enforceability or applicability of the Mutual arbitration agreement are to be resolved by an arbitrator.   As such, the issue, respectfully, is one to be decided by an arbitrator."   Doc. No. 4, at 9.   Defendant does not point to any specific portion of the arbitration agreement, nor does Defendant cite any law in support.   *See id.*   Instead, Defendant relies solely on the declaration of Ms. Tercero, which purports to quote the arbitration agreement.   *See* Doc. No. 4-1, at 8 ¶ 18.   Defendant does not further mention this issue in its reply brief or its post-hearing memorandum, nor did Defendant raise this issue at the hearing.   *See* Doc. Nos. 15, 24, 27. Neither does Plaintiff address it at all in her briefing.   *See* Doc. Nos. 12, 26.   Moreover, the parties agreed at the hearing that the Court would act as the trier of fact with respect to whether a valid arbitration agreement exists.   Tr. at 7.   Accordingly, Defendant has waived this conclusory argument.   *See generally N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.").

the formation of contracts while at the same time, taking into consideration the federal policy favoring arbitration." *Armont v. K12 (Fla. Cyber Charter Acad. - FLCCA)*, No. 3:19-cv-334-J-34MCR, 2019 WL 7666549, at *7 (M.D. Fla. Dec. 6, 2019) (quoting *Corbin v. Affiliated Computer Servs.*, No. 6:13-cv-180-Orl-36TBS, 2013 WL 3804862, *3 (M.D. Fla. July 19, 2013)).   "To prove the existence of a contract under Florida law, the party seeking to enforce the contract must prove 'offer, acceptance, consideration and sufficient specification of essential terms.'" *Schoendorf v. Toyota of Orlando*, No. 6:08-cv-767-Orl-19DAB, 2009 WL 1075991, *6 (M.D. Fla. Apr. 21, 2009) (quoting *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004)).   "The proponent of the contract must prove these elements by a preponderance of the evidence."   *Id.*[7]

## III.   EVIDENTIARY CONSIDERATIONS.

As mentioned above, during the hearing, issues arose as to whether the Court should consider as evidence the materials attached to the parties' filings (*i.e.*, the declarations of Ms. Tercero and Ms. Jones, supporting exhibits, and Plaintiff's declaration) in resolving Defendant's motion.   At the beginning of the hearing, the following exchange occurred with counsel:

> **THE COURT:** . . . [J]ust for the record -- and, Mr. Smith, I assume you have no objection to this -- the evidence that both sides have submitted along with their motion, response, and reply, I will consider that evidence along with whatever's presented here today.
>
> Do you have any objections to that, Mr. Smith?
>
> **MR. SMITH:** No, Judge.
>
> **THE COURT:** Okay. Mr. Cula, any issues with that?
>
> **MR. CULA:** No objection.

---

[7] At the hearing, the parties agreed that while the FAA governs, Florida contract law applies to their dispute.   Tr. 6–7.

Tr. 10.[8]

At the conclusion of Defendant's case, however, Plaintiff raised a hearsay objection to the Court's consideration of the declarations attached to Defendant's motion and reply.   Tr. 46–47. Specifically, the Court asked defense counsel if there were any exhibits besides Exhibits 1 and 2 that Defendant intended to admit into evidence, and the following exchange occurred:

> **MR. CULA:** No. Well, three of them are the declarations that Your Honor already stated you will -- Your Honor will consider as part of the decision here.
>
> **THE COURT:** Okay.
>
> **MR. CULA:** And the rest of them, I'm – I'm okay not -- not admitting them at this time.
>
> **THE COURT:** Okay. So just so that we're clear on the record, then, Exhibits 1 and 2 have been admitted with the modifications we previously discussed.   We're not having 3 and 4 admitted; and then Exhibit 5, 6, and 7 are already part of the court docket.   They're declarations that were filed along with the motion, response, and reply.
>
> **MR. CULA:** Correct, Your Honor.
>
> **THE COURT:** Okay. So I'm not going to admit them again.   I'm just going to take judicial notice, if that's even necessary since they're attached to the motions. Mr. Smith.
>
> **MR. SMITH:** Yeah. So I am raising a hearsay objection as to those affidavits.   Even though, yes, they are filed and they are on the docket, they're still hearsay, and I think the cases say, you know, I can't cross-examine a declaration even though it's on the docket, and so I object to the contents of those as hearsay.

*Id.*   The undersigned raised concerns as to why counsel for Plaintiff waited until that point in the proceedings to raise a hearsay objection as to the declarations, particularly where counsel had ample opportunity to raise the objection in the pre-hearing briefing:

> **THE COURT:** . . .   I guess the issue I have, Mr. -- Mr. Smith, is if you filed your response and didn't raise any concerns with the -- at least with the declaration for Ms. Amanda Tercero, which was attached to the original motion -- I understand you may not have had an opportunity with respect to the reply -- I would -- and I'm going

---

[8] Mr. Smith is counsel for Plaintiff, and Mr. Cula is counsel for Defendant.

to allow -- just so the parties know, in lieu of closing argument, I'm going to allow supplemental briefing. I'm going to want you to give me some authority why I should allow you to raise a hearsay objection now when you already had an opportunity to do it months ago.

**MR. SMITH:** Okay.

**THE COURT:** So with Vicki Jones, I will, as part of the supplemental briefing, allow you to address any hearsay concerns you have with respect to her. And, like I said, if there's law that says you can raise it again now, that's fine. And the reason I say that is, is because Mr. Cula has not admitted them as exhibits in this hearing, so they're not before me to consider whether or not they're being admitted again.

Tr. 48.

In her post-hearing briefing, Plaintiff maintains her hearsay objection to consideration of Ms. Tercero and Ms. Jones' declarations. Doc. No. 26, at 17–23. Plaintiff contends that because the Court held an evidentiary hearing, Defendant never introduced the declarations into evidence, and neither declarant was available for cross examination, the Court should not consider the declarations in resolving Defendant's motion to compel arbitration. *Id.* at 17–19.[9] Plaintiff also argues that Ms. Jones and Ms. Tercero lack personal knowledge as to the contents of their declarations, and the declarations are unreliable because they contradict each other. *Id.* at 19–22. Plaintiff further contends that assessing credibility requires live testimony. *Id.* at 22. Nonetheless, Plaintiff does not address the exchange at the beginning of the hearing where counsel stated he did not object to the Court's consideration of these materials. *See id.* at 17–23.

Defendant does not address the admissibility of the declarations at all in its post-hearing briefing. *See* Doc. No. 27. And it is undisputed that Defendant did not introduce the declarations

---

[9] In her post-hearing briefing, Plaintiff acknowledges that if the Court agrees that the Tercero and Jones' declarations constitute inadmissible hearsay, the same analysis applies to her own sworn declaration submitted with her response to Defendant's motion. *See* Doc. No. 26, at 7 n.1.

into evidence during the evidentiary hearing, and Defendant did not make the declarants available to testify in person at the evidentiary hearing.

On review, Plaintiff arguably waived any hearsay objection to consideration of the declarations at the beginning of the hearing when her counsel stated that he had no objections the Court's consideration of the materials attached to the parties' filings in resolving Defendant's motion.   *See* Tr. 10.   Nonetheless, because this waiver issue has not been raised by Defendant, I decline to find waiver here.   Moreover, I find that Plaintiff's hearsay concerns really were "at issue" only when the discussion arose as to whether Defendant was going to attempt to admit the declarations into evidence.   *See* Tr. 46–47.   Accordingly, declining to find waiver, I next address the arguments made by Plaintiff in the post-hearing briefing.   And upon consideration, I agree with Plaintiff that without a basis for admission of the declarations into evidence, and a demonstration by Defendant that an exception to the rule against hearsay applies, the declarations are properly disregarded as evidence by the Court for the reasons discussed herein.

Pursuant to the FAA,

If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.   If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure.

9 U.S.C. § 4.

The Eleventh Circuit has held that, in general, "a summary judgment-like standard" applies to motions to compel arbitration, in that a district court may conclude as a matter of law that the parties did or did not enter into an arbitration agreement only if "'there is no genuine dispute as to

any material fact' concerning the formation of such an agreement." *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016) (citing Fed. R. Civ. P. 56(a)).   Here, upon consideration of the parties' filings, including the motion, response, reply, and supporting exhibits, I determined that there were indeed issues of fact precluding such determination on the papers, in particular because the parties' filings raised issues that would require credibility assessments of the parties' respective witnesses.

Given that no party had requested a jury trial pursuant to the FAA, 9 U.S.C. § 4, and that the parties' filings raised issues of fact precluding application of "a summary judgment-like standard," I *sua sponte* set the matter for an evidentiary hearing.   *See, e.g.*, *Desimoni v. TBC Corp.*, No. 2:15-cv-366-FtM-99CM, 2016 WL 3675460, at *2 (M.D. Fla. June 9, 2016) (evidentiary hearing held on motion to compel arbitration); *Schoendorf*, 2009 WL 1075991, at *11 & n. (same); *Snider v. Conway Lakes NC, LLC*, No. 6:05-cv-1151-Orl-22JGG, 2006 WL 8439393, at *4 (M.D. Fla. Jan. 31, 2006) (same).   *See also Card v. Wells Fargo Bank, N.A.*, No. 3:19-CV-1515-SI, 2020 WL 1244859, at *7 (D. Or. Mar. 16, 2020) (citation omitted) ("[T]his dispute involves the credibility of the parties, which the Court cannot determine based on the evidence thus far submitted.   Therefore, before ruling on [the defendant's] motion, an evidentiary hearing [or jury trial] must be held to determine whether a valid arbitration agreement exists.").   At the evidentiary hearing, the parties agreed that the Court could act as the trier of fact in resolving Defendant's motion.   *See* Tr. 7.

In setting the matter for an evidentiary hearing, the undersigned specifically notified the parties that the Federal Rules of Evidence would apply during the proceeding.   *See* Doc. No. 18. Despite the opportunity to do so, Defendant has made no attempt to argue that the declarations at issue are not hearsay, or that any exception to the rule against hearsay applies.   *See generally Nawab v. Unifund CCR Partners*, 553 F. App'x 856, 859 (11th Cir. 2013) ("'Hearsay' is defined as

a statement, other than one made by the declarant while testifying at a trial or hearing, offered in evidence to prove the truth of the matter asserted." (citing Fed. R. Evid. 801(c)); *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (providing that an affidavit "can be reduced to admissible form at trial by calling the affiant as a witness" (citation and internal quotation marks omitted)).   Accordingly, I find that the declarations submitted with the motion, response, and reply, none of which were admitted into evidence at the evidentiary hearing, constitute hearsay and should not be considered over Plaintiff's objection to same.  *See also United States v. Shiner*, No. 06-80199, 2008 WL 11341316, at *1 (S.D. Fla. Oct. 7, 2008) (finding affidavits were hearsay, and "without being subjected to cross-examination, cannot provide a sufficient evidentiary basis for the Court . . . ."); *Fortune v. Fortune*, 61 So. 3d 441, 445 (Fla. 2d Dist. Ct. App. 2011) ("It is well settled that affidavits are not admissible to prove facts in issue at an evidentiary hearing because they are not subject to cross-examination and because they impermissibly shift the burden of proof to the other party.").

In sum, while it may be appropriate for a court to consider sworn declarations and affidavits under "a summary judgment-like standard," *see* Fed. R. Civ. P. 56(c)(4), in determining that disputed issues of fact precluded application of this standard, finding an evidentiary hearing necessary to resolve the motion, determining that the Federal Rules of Evidence would apply during such proceeding, *see* Doc. No. 18, and upon agreement of the parties that the Court is acting as the trier of fact, *see* Tr. 7, I find Plaintiff's objection to consideration of the sworn declarations submitted with the motion, response, and reply well taken.  *See Marine Diesel Specialists, Inc. v. M/Y "20%,"* No: 2:17-cv-689-FtM-99MRM, 2018 WL 2926175, at *2, n.5 (M.D. Fla. May 24, 2018) ("The Court finds that the attempted submission of testimony from [two] witnesses by affidavit or declaration effectively deprived Plaintiff of the ability to cross-examine the witnesses at the

evidentiary hearing.   Accordingly, the Court sustains Plaintiff's objections concerning the admissibility of these affidavits and will not consider them.").

Accordingly, I find that the only competent evidence before the Court in resolving whether the parties entered into a valid arbitration agreement is the testimony from, and exhibits entered into evidence at, the evidentiary hearing.[10]

## IV.   VALIDITY OF ARBITRATION AGREEMENT.

The issue of whether the parties entered into a valid mutual arbitration agreement boils down to an issue of fact as to whether Plaintiff signed the mutual arbitration agreement during the employment onboarding process.   In essence, the issue is one of credibility, particularly as to whether the Court finds credible Plaintiff's testimony that she did not sign the mutual arbitration agreement, or Defendant's evidence that Plaintiff was presented with the arbitration agreement and electronically signed the document during the employment onboarding process.   To fully set forth the issues for the Court, I will first address the testimony and evidence presented at the evidentiary hearing, followed by the parties' arguments made in post-hearing briefing, and conclude with an analysis as to whether a valid mutual arbitration agreement exists.

A.   <u>Hearing Testimony and Evidence</u>.

As discussed above, Defendant called only one witness at the hearing:   Ms. Kameron Smith. Tr. 10.   Ms. Smith testified as follows.   She is employed by Defendant in its East Florida Division,

---

[10] As discussed in the remainder of this Report, I will respectfully recommend that the Court find that a valid agreement to arbitrate exists.   Thus, even if the Court found waiver of Plaintiff's hearsay objection with respect to the declarations or that the declarations were otherwise admissible absent Ms. Tercero and Ms. Jones testifying at the evidentiary hearing, consideration of the declarations would not alter the outcome of this case.   Specifically, I agree with Plaintiff's argument that the declarations in large part are not based on personal knowledge with respect to Plaintiff's onboarding process, and the declarations contradict each other in at least one key respect.   If anything, they would bolster Ms. Smith's testimony about the onboarding process in general.   Thus, even if the Court were to consider the declarations, their persuasive effect would be minimal, at best.

located in Brevard County, as an Office Manager, HR Coordinator.  Tr. 11, 50.  Ms. Smith has been employed by Defendant since 2005, starting as a contracts coordinator and transitioning into her current position.  *Id.*  Ms. Smith works in the same office where Plaintiff worked, and she is responsible for conducting the new hire onboarding process, which entails "just mak[ing] sure the documents get completed before [she] forward[s] them up to corporate."  Tr. 11–12.  Ms. Smith processes every new employee in her division; it is a part of her everyday job duties, and she has processed "[p]robably over 200" new hires for Defendant.  Tr. 13, 14.

Defendant uses an online employment onboarding process and has been utilizing a third-party software called Taleo since the beginning of 2015.  Tr. 15.  Plaintiff was hired in November 2015.  Tr. 15–16.  Persons applying for employment with Defendant create a login and password through Taleo when they apply for the position.  Tr. 16.  Defendant does not have access to that information.  Tr. 16–17.  After an employee is hired, he or she uses the same login and password to complete onboarding paperwork.  Tr. 17.

When an employee arrives for the onboarding process, he or she is provided a laptop computer in a conference room.  *Id.*  The employee uses the login and password he/she created to apply for the position, which then populates twenty-two (22) onboarding tasks to be completed.  Tr. 15, 17, 20.  The onboarding paperwork is the same for all new employees, except it now includes a bullying video Defendant did not have when Plaintiff was employed, and managers must watch a video that non-managers are not required to watch.  Tr. 18–19.  The onboarding paperwork always includes a mutual arbitration agreement, no exceptions, and Defendant has required every employee to execute an arbitration agreement since at least 2005, when Ms. Smith signed one herself.  Tr. 21–22.  Although the employee can temporarily skip around on the onboarding tasks in the Taleo

system, the employee cannot complete the onboarding package until every document is completed. Tr. 19–20.   Completion of every document means a signature from the employee.   Tr. 23.

After the employee completes the onboarding tasks, the Taleo system flags Ms. Smith to complete her tasks, which includes adding her signature to the mutual arbitration agreement.   Tr. 23–24.   The documents would not be flagged for Ms. Smith's review unless all of the documents in the onboarding packet were completed by the employee, including signing the mutual arbitration agreement.   Tr. 24, 25.   During the onboarding process, Ms. Smith does not have access to the employee's Taleo profile, cannot make changes to the employee's documents, and does not have access to the employee's username and password.   Tr. 21.   After Ms. Smith completes her tasks, Taleo notifies the corporate new hire team in Texas, which reviews the documents, and then the entire process is reviewed by a corporate audit team.   Tr. 25.   During cross-examination, Ms. Smith acknowledged that the corporate employees have more tasks to complete in the Taleo system that she does, and that she lacked personal knowledge as to the different levels of corporate access within the Taleo software.   Tr. 54–55.

Regarding Plaintiff's onboarding process, Ms. Smith followed the same general procedure using the Taleo online system.   Tr. 29.   Ms. Smith had Plaintiff log in on a computer in a conference room using the login and password Plaintiff created when she applied for the position. *Id.*   Upon login, Plaintiff's onboarding tasks populated on Taleo, Plaintiff completed the tasks, and after the process was completed, the documents were sent to Ms. Smith for completion.   Tr. 29–30.

Through Ms. Smith's testimony, and subject to Plaintiff's objection that the signature on the mutual arbitration agreement was not her signature,[11] Defendant introduced Exhibit 1 into evidence,

---

[11] During the hearing, the undersigned permitted a standing objection to the mutual arbitration agreement where it says Plaintiff signed said agreement, insofar as Plaintiff is disputing it is her electronic signature on that document.   Tr. 40.

which included a copy of the employment onboarding documents from the Taleo software used by Defendant.   Tr. 30–31, 37–38.   *See* Doc. No. 22-1 (copy of Exhibit 1 filed under seal).   Ms. Smith testified that these documents were "for the most part" the onboarding package, excluding videos, and that Exhibit 1 fairly and accurately represented a printout of the documents from Taleo.   Tr. 30–31.   Plaintiff stipulated that every electronic signature on the documents in Exhibit 1 was hers, except for the electronic signature on the mutual arbitration agreement.   Tr. 36, 37.   Defendant also introduced a stand-alone copy of the mutual arbitration agreement into evidence as Exhibit 2, again subject to Plaintiff's objection that the signature on the arbitration agreement is not hers.   Tr. 38–39.

According to Ms. Smith, Plaintiff's signature would be on the mutual arbitration agreement because Plaintiff signed her last name and submitted the document via the Taleo software.   Tr. 41. No one else could have placed Plaintiff's signature on the agreement; Ms. Smith could not access Plaintiff's Taleo profile to add the signature herself, nor would Taleo automatically fill in the signature.   Tr. 41–42.   Ms. Smith also electronically signed the mutual arbitration agreement.   Tr. 42–43.   She was notified by Taleo that her tasks were ready, and then she signed her last name to the agreement and submitted the document.   Tr. 43.   Ms. Smith would not have received notification from Taleo if Plaintiff had not signed the arbitration agreement.   *Id.*   Upon questioning from the Court, Ms. Smith further testified that an employee could not go in and change the dates on the documents in the onboarding packet after the fact because the documents are time-stamped on the date signed; the time stamp matches the employee's start date on his/her offer letter as well as an I-9.   *Id.*   By "time-stamped," Ms. Smith clarified that the Taleo software automatically inputs the date next to the signature.   Tr. 44.

The mutual arbitration agreement includes a provision allowing an employee to opt out of the agreement, by contacting the Texas corporate office.   Tr. 45.   However, an employee cannot simply refuse to sign the mutual arbitration agreement, which must be executed to complete the onboarding process.   Tr. 45–46.   Plaintiff never requested an opt-out form.   Tr. 46.

During cross examination, Ms. Smith testified that Defendant's hiring practices are standardized, and Plaintiff applied for a job and was then contacted by Defendant about the employment opportunity.   Tr. 50, 53.[12]   In giving her testimony, Ms. Smith was relying in large part on her review of the onboarding documents and "how this process normally works," rather than an independent recollection of Plaintiff's actual onboarding process.   Tr. 60.

Ms. Smith further testified that Plaintiff's onboarding process was completed on a laptop issued to Plaintiff by Defendant.   Tr. 60–61.   After Plaintiff completed the onboarding process, Plaintiff took the laptop with her, either leaving it in her office or taking it home.   Tr. 61.   Ms. Smith helped Plaintiff with the onboarding process, in that she showed Plaintiff how to get to the "career" section on Taleo, from where Plaintiff logged in and the onboarding tasks populated, and Ms. Smith showed Plaintiff the tasks that needed to be completed.   Tr. 62.   After getting Plaintiff situated, Ms. Smith left the conference room and went to her own office until Plaintiff was finished or had a question.   *Id.*   Ms. Smith did not personally see Plaintiff fill out the onboarding documents.   Tr. 62–63.   Defendant rested after presentation of Ms. Smith's testimony.   Tr. 70.

As discussed above, Plaintiff presented only her own testimony at the hearing.   Tr. 70–108.   Plaintiff testified as follows.   Plaintiff was solicited by Defendant's Chief Financial Officer ("CFO") for employment; she was interviewed before any job was posted online internally or

---

[12] Ms. Smith testified that Defendant has a presence in twenty-seven states, from Hawaii to Florida, and acknowledged that she only has firsthand knowledge as to what happens at the Florida office.   Tr. 59–60.

externally by Defendant.   Tr. 71–72.   She was verbally extended an employment offer before the position was posted, and once the position was posted externally, she was told to then submit the online employment application.   Tr. 72, 76.   However, she did not receive an employment offer letter until after she submitted the online application.   Tr. 78.   Plaintiff worked as an accountant for Defendant for four and a half years.   Tr. 89.

Regarding the employment onboarding process, Plaintiff adamantly denied seeing or signing the mutual arbitration agreement.   Tr. 80–81, 88.   Plaintiff is familiar with arbitration agreements due to her experience as an accountant in HR for over twenty-four years.   Tr. 81.   She would not have signed an arbitration agreement where she was recruited to work for Defendant, as she was "very happy" at the place she was employed when recruited by Defendant.   *Id.*[13]   The onboarding process included Ms. Smith setting up a laptop at a "small conference table," Plaintiff logging in, Ms. Smith "walk[ing] [her] through how to do things," and then Ms. Smith retreating to her office. Tr. 84.   Only Plaintiff was present in the room when the onboarding documents were completed. *Id.*   The onboarding documents referenced other documents that were not part of the onboarding package, such as an employee handbook.   Tr. 85.   Plaintiff was required to sign a document saying that she read and viewed the handbook, without actually receiving the handbook, at Ms. Smith's direction.   Tr. 85–88.   At the conclusion of her onboarding, Plaintiff left the computer used with Ms. Smith "because [her] office was not even ready yet."   R. 98.

During cross examination, Plaintiff acknowledged that although there were employment negotiations prior to her applying for a position with Defendant, she ultimately had to apply online for the position.   Tr. 90.   In applying online, Plaintiff had to create a username and password to

---

[13] Plaintiff testified that she was employed at Christian Care Ministry as a senior staff accountant at that time.   Tr. 93.

submit that application via the Taleo software.   Tr. 90–91.   Plaintiff never shared that username or password with anyone.   Tr. 90.   Plaintiff acknowledged that the same software and login credentials used to submit the application were used during the onboarding process.   Tr. 91–92. Plaintiff acknowledged signing "some" onboarding documents on the date of onboarding using the Taleo system.   Tr. 94.   Plaintiff signed every other document in the onboarding package, but she maintained that the arbitration agreement was not part of the onboarding package, and that she never signed it.   Tr. 94–96, 101, 103.   On cross-examination, Plaintiff acknowledged that the sole basis for her testimony that she never signed nor saw an arbitration agreement and that it was not part of the onboarding package was her independent recollection of the day of the onboarding process in 2015.   Tr. 96–98.   Plaintiff testified that she would not have left her prior place of employment had she been presented with an arbitration agreement.   Tr. 99–100.   On re-direct, Plaintiff further confirmed that no one else was in the room while she filled out the onboarding paperwork, and that she "is the only person on this planet [who] saw with their eyes the documents that [she was] presented with and that [she] clicked on during th[e] onboarding process."   Tr. 106.

      B.    <u>Post-Hearing Briefing</u>.

      In its post-hearing briefing, Defendant argues that Plaintiff's testimony that she was not presented with the mutual arbitration agreement, despite her stipulation that she was presented with the remainder of the onboarding documents, is simply less than credible given the evidence presented by Defendant regarding the employment onboarding process.   Doc. No. 27, at 10–12. Defendant also contends that Plaintiff's "bare denial" that she received the mutual arbitration agreement, or a "lack of recollection," are alone insufficient to defeat a motion to compel arbitration. *Id.* at 12–13.   Relying on Ms. Smith's testimony, Defendant argues that the evidence demonstrates that Plaintiff signed the mutual arbitration agreement because Defendant would not have received

Plaintiff's onboarding documents for further processing had Plaintiff not signed the mutual arbitration agreement along with the rest of the onboarding documents.   *Id.* at 14.   Because Plaintiff's electronic signature is on the mutual arbitration agreement, Defendant presented evidence that said mutual arbitration agreement is always part of its employment onboarding paperwork, and Plaintiff did not opt-out of the arbitration agreement, Defendant concludes that it has carried its burden of demonstrating that the parties entered into a mutual arbitration agreement.   *Id.* at 15–16.

On the other hand, Plaintiff argues that Defendant has failed to carry its burden.   Doc. No. 26.   Plaintiff contends that she "is the only person capable of providing direct evidence regarding what was presented to her and what she signed during her first day of employment with Defendant," and she maintains that the employment onboarding documents did not include a mutual arbitration agreement.   *Id.* at 4, 14.   Plaintiff finds Defendant's reliance on "assembly line" general hiring procedures unpersuasive, given that she was recruited by Defendant's CFO and not through general hiring practices.   *Id.* at 5, 14.   Plaintiff relies heavily on *Schoendorf v. Toyota of Orlando*, No. 6:08-cv-767-Orl-19DAB, 2009 WL 1075991, at *13 (M.D. Fla. Apr. 21, 2009), to argue that Defendant's circumstantial evidence alone is insufficient to demonstrate that a valid arbitration agreement exists in light of her direct testimony that she did not sign the agreement.   *Id.* at 6–12.[14]

---

[14] Plaintiff actually relies upon *Schoendorf* for the more general proposition that circumstantial evidence can never establish the existence of a binding arbitration agreement "when a plaintiff provides credible direct testimony that she did not sign the alleged arbitration agreement."   *See* Doc. No. 26 at 6–7.   However, *Schoendorf* does not stand for such a broad legal tenet, but rather was resolved on the specific facts and evidence presented to the court.   And while *Schoendorf* does contain many factual similarities to the present case, I find it distinguishable in one important respect.   *Schoendorf* concerned paper documents utilized in employment onboarding, the plaintiff's signature varied on all of the onboarding documents, the plaintiff disputed she signed the arbitration agreement, and the defendant failed to present a handwriting expert or any other definitive evidence demonstrating that the "scribble" on the arbitration agreement was the plaintiff's signature.   *Schoendorf*, 2009 WL 1075991, at *7.   Here, in contrast, the arbitration agreement contains Plaintiff's electronic signature, the same electronic signature present on the remaining onboarding documents, which Plaintiff does not dispute she signed, and which is accompanied by the same date stamp and IP address.   Moreover, unlike in *Schoendorf*, and as discussed in more detail below, I do not find Plaintiff's testimony in this case to constitute "credible direct testimony."   Accordingly, I do not find Plaintiff's reliance on *Schoendorf* determinative of the outcome of the present case.

And, Plaintiff argues that Exhibit 1 only contains thirteen (13) documents, while Ms. Smith testified that there were twenty-two (22) documents included in the onboarding packet, demonstrating that Exhibit 1 is "missing documents." *Id.* at 13–14.[15]

    C.    <u>Analysis</u>.

As is made clear by the parties' briefing, and by the testimony at the evidentiary hearing, the issue of whether a valid arbitration agreement exists is an issue of fact requiring assessment of witness credibility.   Defendant relies on its general onboarding processes and the testimony of Ms. Smith, the person who conducts those onboarding processes (and who conducted Plaintiff's onboarding), to state that a mutual arbitration agreement exists.   Plaintiff relies solely on her own testimony, vehemently denying ever being presented with a mutual arbitration agreement or signing such an agreement.   Upon concession of the parties that the Court is acting as trier of fact in this instance, it is appropriate for the Court to resolve this credibility issue in determining whether a valid arbitration agreement exists. *See also Desimoni*, 2016 WL 3675460, at *6 (credibility

---

Plaintiff also points to *CEFCO v. Odom*, 278 So. 3d 347 (Fla. 1st Dist. Ct. App. 2019) for the proposition that "conclusory statements by an employee who maintained the defendant's onboarding records that was based on what would have been done in accordance with the company's general practices [are] insufficient to establish the existence of a valid arbitration agreement." Doc. No. 26, at 14–15.   However, *CEFCO* is also distinguishable from the present facts because here, unlike in *CEFCO*, the arbitration agreement contains Plaintiff's electronic signature, where in *CEFCO,* the arbitration agreement did "not contain a confirmation box, a date, Appellee's name, or her signature." *CEFCO*, 278 So. 3d at 349. Moreover, unlike in *CEFCO*, the person who actually conducted Plaintiff's onboarding, Ms. Smith, testified about the onboarding process – both generally and for Plaintiff – at the hearing.

[15] Plaintiff also points to *Caley v. Gulfstream Aerospace Corp*., 428 F.3d 1359, 1369 (11th Cir. 2005), and *Corbin v. Affiliated Computer Servs., Inc*., No. 6:13-cv-180-Orl-18TBS (M.D. Fla. Jul. 1, 2013), to argue that there was no acceptance of the arbitration agreement by continued employment in this case. Doc. No. 26, at 15–16.   Although Defendant discusses *Caley* in the initial motion to compel arbitration, Defendant points to no facts that would suggest that the arbitration agreement here was a condition of continued employment. *See* Doc. No. 4, at 10–11.   And Defendant did not further raise this issue at the hearing or in its post-hearing briefing. *See* Doc. Nos. 24, 27.   Accordingly, to the extent the argument has not been abandoned by Defendant, I agree with Plaintiff that Defendant has failed to demonstrate acceptance of the arbitration agreement by continued employment.

determinations made during hearing on motion to compel arbitration), *report and recommendation adopted*, 2016 WL 3633540 (M.D. Fla. July 7, 2016); *Schoendorf*, 2009 WL 1075991, at *6 n.1 ("Because neither party has demanded a jury trial on the arbitration issue, the Court may resolve the matter." (citing 9 U.S.C. § 4)).

While a close case, I am bound by the burden of proof applicable to this dispute, which is the preponderance of the evidence standard. The Supreme Court has defined this burden as follows:

> The burden of showing something by a preponderance of the evidence . . . simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the [judge] of the fact's existence. In other words, the preponderance standard goes to how convincing the evidence in favor of a fact must be in comparison with the evidence against it before that fact may be found, but does not determine what facts must be proven as a substantive part of a claim or defense. Unlike other standards of proof such as reasonable doubt or clear and convincing evidence, the preponderance standard "allows both parties to share the risk of error in roughly equal fashion, except that "when the evidence is evenly balanced, the [party with the burden of persuasion] must lose.

*Metropolitan Stevedore Co. v. Rambo*, 521 U.S. 121, 137 n.9 (1997) (internal citations and quotations omitted).

Applying this burden of proof to Defendant's motion, and based on the hearing testimony and the credibility determinations made therein, I find that Defendant has demonstrated by a preponderance of the evidence that the parties entered into a valid agreement to arbitrate. In other words, I find that existence of the fact that Plaintiff was presented with and affixed her electronic signature to the mutual arbitration agreement is more probable than its nonexistence.

Specifically, through Ms. Smith's testimony, Defendant has set forth the procedures it employs for its onboarding processes. Tr. 11–25. Ms. Smith conducts Defendant's onboarding processes generally, and more particularly, conducted Plaintiff's onboarding. Tr. 11–49. The

onboarding procedures included that Plaintiff created her own login and password for the Taleo platform, which was used both in applying for employment and for completion of the onboarding package.   Tr. 16–17, 29.   It is undisputed that Plaintiff created such login and password, that she used the login and password for both the application process and for completion of the onboarding paperwork, and that Plaintiff never shared the login and password information with anyone.   Tr. 21, 29, 41–42, 90–92.   It is also undisputed that Plaintiff executed every other document included with the onboarding paperwork, although she disputes executing the mutual arbitration agreement. Tr. 36, 37, 94–96.   All of the onboarding documents, including the mutual arbitration agreement, have the same electronic signature,[16] the same date, and many of the documents executed on the date of onboarding – including the arbitration agreement – are marked by the same IP address.   *See* Doc. No. 22-1.

Moreover, Ms. Smith also signed the mutual arbitration agreement on Defendant's behalf. *See id.* at 6.   Ms. Smith's signature is dated the same day as Plaintiff's electronic signature on the agreement, a date that is input by the Taleo software.   *See id.*; Tr. 42–43, 44.   Ms. Smith testified that the mutual arbitration agreement is always part of the onboarding documentation, without exception.   Tr. 21–22.   Ms. Smith further testified that once Plaintiff had completed all of her onboarding documents, including the arbitration agreement, Taleo notified Ms. Smith that the process was ready for completion.   Tr. 43.   Absent Plaintiff's completion of all of the onboarding documents, including execution of the arbitration agreement, Ms. Smith would not have received notification from Taleo that the process had been completed.   *Id.*   It is undisputed that Ms. Smith

---

[16] "Florida law recognizes an electronic signature like it does a written signature." *Bannister v. Sally Beauty Supply, LLC*, No. 3:19-cv-143-J-20JRK, 2020 WL 8223534, at *2 (M.D. Fla. Dec. 15, 2020) (discussing Fla. Stat. § 668.50(7)).   Here, Plaintiff does not dispute the validity of her signature merely because it is in electronic form.   Indeed, in response to the motion to compel arbitration, Plaintiff agrees that she "signed an E-Signature Consent statement which allowed her to electronically sign various documents presented by Defendant in the application and hiring process."   Doc. No. 12, at 2 ¶ 4.

did not have access to Plaintiff's Taleo login or password, and that Plaintiff never disclosed her Taleo login and password to anyone else.   Tr. 21, 41–42, 90.[17]   Besides Plaintiff's bald assertion that she was never presented with nor signed the arbitration agreement, Plaintiff presented no evidence at the hearing to contradict Ms. Smith's testimony regarding the onboarding process, the documents included, and the process at completion of the onboarding documents by the employee.[18]

---

[17] In her post-hearing briefing, Plaintiff suggests that "Defendant's IT employees not only have access to the Taleo passwords, but they can also change an employee's Taleo password," citing the transcript of the evidentiary hearing in support.   Doc. No. 26, at 10 (citing Tr. 101).   The cited transcript, however, does not fully support Plaintiff's suggestion, as the exchange was only as follows:

> **Q.** . . . My question is do you have any explanation as to how your name would have gotten there?
>
> **A.** Anybody in D.R. Horton could have done it. Corporate IT, local IT. We have IT all over. They change passwords for everybody everywhere. For me, they've done it, for every single software that I use, and I'm the accountant. There's – there's several different softwares we use.
>
> **Q.** So --
>
> **A.** And I know this personally.

Tr. 101.   Thus, Plaintiff's testimony that the IT department changed passwords "for everybody everywhere" or in one of the "several different softwares" is insufficient to definitively establish Plaintiff's point. Moreover, Plaintiff herself testified that she never disclosed her Taleo login or password to anyone.   Tr. 90. And when asked, "Is the only explanation you can give us for how your name became affixed onto this document that someone essentially forged it?," Plaintiff responded "No."   Tr. 103.   When asked "What other explanation do you have?," Plaintiff answered "None."   *Id.*   Thus, Plaintiff's hearing testimony amounted to, at most, mere speculation about someone else signing the document by use of her login information and password.

[18] In her post-hearing briefing, Plaintiff attempts to argue that because Ms. Smith testified that the onboarding package included twenty-two (22) documents, and Exhibit 1 includes only contains thirteen (13) documents, Exhibit 1 is "missing documents" from the onboarding package.   Doc. No. 26, at 13 (citing Tr. 19 and Exhibit 1).   First, Plaintiff misreads the hearing transcript.   Ms. Smith never testified that the onboarding package included twenty-two *documents*, rather she testified that the onboarding process consists of 22 *tasks*.   Tr. 13.   Plaintiff nowhere clarified with Ms. Smith whether each task was listed on a separate document, and Ms. Smith testified that Exhibit 1 did not include some of the tasks, such as videos, which would be online.   Tr. 30.   Second, Plaintiff never presented any evidence at the hearing that Exhibit 1 is not fully complete, and objected to Exhibit 1 solely to the extent that Plaintiff disputes that she signed the mutual arbitration agreement.   Nor did Plaintiff impeach Ms. Smith's testimony that Exhibit 1 fairly and accurately represented a printout of the documents from Taleo.   Tr. 30–31.   Accordingly, Plaintiff's argument that Exhibit 1 is "missing documents" is unpersuasive and will not be further addressed herein.

To the extent that Plaintiff suggests that Ms. Smith's testimony was impeached at the hearing, Plaintiff's argument is unpersuasive.   Plaintiff points to her own testimony that she was hired by Defendant's CFO before the position was posted, which she claims is not Defendant's "normal" hiring procedure.   Doc. No. 26, at 5.   However, Plaintiff introduced no evidence at the hearing as it relates to Defendant's "normal" hiring procedure, rendering a comparison impossible. Moreover, even if the manner in which Plaintiff came to apply for a job did not follow the "normal" hiring procedure, I fail to see how such testimony impeaches Ms. Smith's testimony about Plaintiff's employment onboarding on November 11, 2015, particularly given that Plaintiff admits she engaged in the employment onboarding process with Ms. Smith that day, by using her Taleo login and password, and with the exception of whether she signed the mutual arbitration agreement and where she left her laptop, Plaintiff's testimony on this point largely mirrors that of Ms. Smith.[19]

Plaintiff further argues in her post-hearing briefing that she was "never found to be inconsistent or not credible" at the hearing.   Doc. No. 26, at 11.   But the portions of the transcript cited do not support that assertion, nor did the undersigned make any such ruling at the hearing.   To the contrary, I find Plaintiff's bald assertion that she simply did not sign the mutual arbitration agreement less than credible, given Plaintiff's testimony at the hearing, which at times was argumentative, non-responsive, and tangential,[20] and given Ms. Smith's contrary testimony, which I find credible.

---

[19] And again, Plaintiff's counsel appears to misinterpret the hearing testimony.   For while Plaintiff testified that she was initially recruited via a cold call from Defendant's CFO, she further testified that her position was eventually posted online, that she did, in fact, submit an application online, and only after she submitted her application online – which involved creating her Taleo username and password – did she receive her written offer of employment.   Tr. 71–80.

[20] *See, e.g.*, Tr. 74–80, 81–82, 93–94, 97–98, 101–02, 106.

In sum, I find that Defendant has presented prima facie evidence that the parties entered into a mutual arbitration agreement.   Plaintiff's sole evidence to the contrary—her testimony that she did not sign the arbitration agreement with no further support—is not credible, particularly in light of Ms. Smith's testimony, Plaintiff's electronic signature on the arbitration agreement, which was generated through the Taleo software, and every other document bearing Plaintiff's electronic signature, which Plaintiff admittedly signed at the time of onboarding, and which contain the same date stamp as the mutual arbitration agreement.   As such, I find that the preponderance of the evidence weighs in favor of Defendant, which has met its burden to establish that a valid mutual arbitration agreement exists between the parties, which covers the dispute at issue in this case, such that Plaintiff should be compelled to submit to arbitration.[21]

For these reasons, I will respectfully recommend that Defendant's motion to compel arbitration (Doc. No. 4) be granted, to the extent that the Court find that a valid arbitration agreement exists, and that Plaintiff should be compelled to submit the case to arbitration.   *See Desimoni*, 2016 WL 3675460 (granting motion to compel arbitration under factually similar circumstances, where

---

[21] As previously noted, Plaintiff does not dispute that her retaliation dispute would fall within the mutual arbitration agreement and does not argue that the arbitration agreement itself is otherwise unenforceable.   And with the exception of the issue of acceptance via continued employment, Plaintiff also has made no persuasive argument with respect to the other elements of a valid arbitration agreement (offer, acceptance, consideration and sufficient specification of essential terms).   As discussed herein, presentation of the arbitration agreement to Plaintiff constituted an offer, which Plaintiff accepted by electronic signature. Plaintiff's lone perfunctory and unsupported statement that Defendant failed to establish the requisite consideration is insufficient to challenge that element   *See, e.g., NLRB*, 138 F.3d at 1422 ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived."); *Vince v. Specialized Services, Inc.*, No. 8:11-cv-1683-T-24TBM, 2011 WL 4599824, at *3 (M.D. Fla. Oct. 3, 2011) (finding sufficient consideration for a mutual arbitration agreement because "[u]nder Florida law 'mutual promises and obligations are sufficient consideration to support a contract." (quoting *Santos v. Gen. Dynamics Aviation Servs. Corp.*, 984 So. 2d 658, 661 (Fla. 4th Dist. Ct. App. 2008))).   And Plaintiff nowhere addresses the specification of essential terms in her briefing, waiving any argument in that regard.   The undersigned therefore finds that each of the contractual elements has been established – either via the evidence and testimony offered at the hearing (as to offer, acceptance, and consideration) or via the apparent agreement of the parties (as to specificity of essential terms).

arbitration agreement was electronically signed using a secure username and password via a standardized "Kronos" software program, and the only evidence plaintiff presented in opposition was his own testimony that he never saw or signed the arbitration agreement); *Buckhalter v. J.C. Penney Corp.*, No. 3:11-cv-752-CWR-FKB, 2012 WL 4468455 (S.D. Miss. Sept. 25, 2012) (finding valid arbitration agreement existed under similar Mississippi law, where agreement was electronically signed, using a secure username and password, during the onboarding process, and manager who supervised plaintiff's onboarding process provided testimony via an admissible affidavit).

     D.    <u>Whether a Stay or Dismissal is Appropriate</u>.

In the motion to compel arbitration, Defendant "requests that the Court enter an order compelling arbitration on an individual basis and dismissing or staying this action pending the completion of arbitration." Doc. No. 4, at 14.

A stay, rather than dismissal, is appropriate. *See* 9 U.S.C. § 3; *Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir. 1992). *See also Benton v. Auto Approval, Inc.*, No. 8:18-cv-2646-T-02AAS, 2018 WL 6706319, at *1 (M.D. Fla. Dec. 12, 2018) ("Pursuant to *Bender v. A.G. Edward & Sons, Inc.*, 971 F.2d 698 (11th Cir. 1992), this Court has no authority to dismiss Plaintiff's claims. In *Bender*, the Eleventh Circuit stated that although the district court properly determined that the claims were subject to arbitration, it 'erred in dismissing the claims rather than staying them.'").

     E.    <u>Fees and Costs</u>.

In its motion to compel arbitration, Defendant argues that "[t]he issue of arbitrability is so clear here that, but for Plaintiff's insistence, this Motion would not have been necessary." Doc. No. 4, at 13. Accordingly, Defendant asks that the Court order Plaintiff and/or Plaintiff's counsel

to pay $1,000 in fees and costs as a sanction for Plaintiff's "failure to make any effort to avoid the filing of this Motion."   *Id.* at 13–14.   Defendant cites absolutely no legal authority in support.   *See id.*   Again in its reply and post-hearing briefing, Defendant seeks an award of fees and costs incurred in seeking to compel arbitration, with no legal support.   Doc. No. 15, at 5; Doc. No. 27, at 16.   Plaintiff, for her part, opposes the request as lacking "any contract or statutory authority." Doc. No. 12, at 9.   Nonetheless, Plaintiff likewise requests to recover her attorney's fees and costs in defending the motion, without citation to any legal authority in support.   *See* Doc. No. 12, at 10; Doc. No. 26, at 24.

Upon consideration, absent citation to legal authority demonstrating that an award of fees or costs is proper, it is respectfully recommended that both parties' requests for fees and costs in litigating the present motion be denied.   *See also Albertson v. Art Inst. of Atlanta*, No. 1:16-cv-03922-WSD-RGV, 2017 WL 9474223, at *8 (N.D. Ga. Mar. 23, 2017), *report and recommendation adopted*, 2017 WL 1361293 (N.D. Ga. Apr. 14, 2017) (denying request for attorney's fees under 28 U.S.C. § 1927 related to motion to compel arbitration); *Diggs v. Citigroup, Inc.*, No. 3:12-CV-1612-L, 2013 WL 124110, at *3 (N.D. Tex. Jan. 8, 2013) (sustaining objection to imposition of attorney's fees under Fed. R. Civ. P. 11 related to a motion to compel arbitration), *aff'd,* 551 F. App'x 762 (5th Cir. 2014).

## V.     RECOMMENDATION.

For the reasons discussed herein, it is **RESPECTFULLY RECOMMENDED** that the Court:

1. **GRANT in part and DENY in part** Defendant D.R. Horton's Motion to Compel Arbitration and Dismiss or, in the Alternative, Stay Proceedings Pending Arbitration (Doc. No. 4).

2. **ORDER** the parties to submit to arbitration pursuant to the mutual arbitration agreement.

3. **STAY** the case pending the outcoming of arbitration.

4. **DENY** Defendant's motion (Doc. No. 4) in all other respects

5. **ORDER** Defendant to submit a status report to the Court every sixty (60) days from the date Plaintiff's claims are submitted to arbitration, and every sixty (60) days thereafter, until the conclusion of the arbitration proceeding.

<u>**NOTICE TO PARTIES**</u>

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.   A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on August 12, 2021.

LESLIE R. HOFFMAN
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record